## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TYRONE HENRY**

**VERSUS**

**TIMOTHY HOOPER,**
**WARDEN**

**CIVIL ACTION**

**NO.  20-3058**

**SECTION "D"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Tyrone Henry ("Henry"), is a convicted inmate incarcerated in the Dixon Correctional Institute, in Jackson, Louisiana.  On November 3, 2016, Henry was charged in Orleans Parish with two counts of first degree rape in violation of La. Rev. Stat. § 14:42 and one count of attempted first degree rape in violation of La. Rev. Stat. § 14:42.1.[2]  Henry entered a plea of not guilty in the case.[3]  On May 31, 2018, pursuant to a plea agreement, charges were amended

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]St. Rec. Vol. 2 of 3, Bill of Indictment, 11/3/16.

[3]St. Rec. Vol. 1 of 3, Minute Entry, 11/10/16.

to two counts of second degree rape and one count of attempted second degree rape.[4]  On May 31, 2018, Henry withdrew his former plea and, pursuant to the plea agreement with the State, Henry pled guilty to all three counts.[5]

On June 5, 2018, pursuant to the plea agreement, the Trial Court sentenced Henry to twenty years as to count three and forty years as to counts one and two, to be served at hard labor and to run concurrent.[6]  His conviction became final under federal law thirty days later, on July 5, 2018, because he did not seek reconsideration of the sentence or move for leave to appeal.  La. Code Crim. P. art. 914.[7]  *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) ).

On June 13, 2018, Henry filed an application for post-conviction relief asserting the following claims for relief: (1) ineffective assistance of counsel prior to and at sentencing; (2) the sentence imposed is excessive; and (3) he did not knowingly and intelligently enter into the plea agreement, which he entitled "Breach of the Plea Bargain Agreement."[8]

---

[4]St. Rec. Vol. 2 of 3, Amended Bill of Information,5/31/18.

[5]St. Rec. Vol. 1 of 3, Minute Entry, 5/31/18.

[6]St. Rec. Vol. 1 of 3, Minute Entry, 6/5/18.

[7]Louisiana law requires a criminal defendant to move for leave to appeal within 30 days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1).  Failure to move timely for appeal under Art. 914 rendered the conviction and sentence final at the expiration of that period.  *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

[8]St. Rec. Vol. 2 of 3, Uniform Application for Post-Conviction Relief, 6/18/19.

On July 1, 2019, the Trial Court denied the application finding his claims were not cognizable for post-conviction review and citing La. Code Crim. P. 930.3 and *State ex rel Melinie v. State*, 665 So. 2d 1172 (La. 1996).[9]

The Louisiana Fourth Circuit denied Henry's related writ application.[10]  The court found that the Trial Court correctly denied Henry's excessive sentence and ineffective assistance of counsel in sentencing claims, citing *State ex rel. Melinie*.[11]  The court found that Henry's challenge to his guilty plea was cognizable, but that he had not made a threshold showing that he was entitled to post-conviction relief.[12]

On February 26, 2020, the Louisiana Supreme Court denied Henry's related writ application finding it untimely pursuant to La. S. Ct. R. X §5.[13]   On March 6, 2020, Henry requested rehearing, explaining that, due to a typographical error made by the Clerk's Office, he did not receive the decision from the Louisiana Fourth Circuit until October 19, 2019, and that he filed his writ application within thirty days of that date.[14]  On November 24, 2020, the Louisiana Supreme Court granted Henry's request for reconsideration and denied his writ application.[15]

---

[9]St. Rec. Vol. 2 of 3, Ruling, 7/1/19.

[10] St. Rec. Vol. 2 of 3, 4th Cir. Order, 2019-K-0667, 9/17/19; 4th Cir. Writ Application, 2019-K-0667, 8/5/19.

[11]*Id*.

[12]*Id.*

[13]*State v. Henry*, No. 2019-KH-02071, 2020 WL 10787523 (La. Feb. 26, 2020); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2019-KH-02071, 2/26/20; La. S. Ct. Writ Application, 19 KH 2071, 11/16/19.

[14]St. Rec. Vol. 3 of 3, Petition for Rehearing and Suggestions in Support, 3/6/20.

[15]*State v. Henry*, 304 So.3d 859 (La. 2020).

## II.    **Federal Habeas Petition**

On October 21, 2020, Henry filed his original petition for federal habeas corpus.[16]  Henry raises the following claims for relief: (1) ineffective assistance of counsel for misadvising him that he would receive a ten-year sentence and for failing to (a) request DNA tests to be performed on the victim and gather medical evidence; (b) file a motion to suppress his statement to police; (c) hire an investigator to "explore the sexual activities of the victim's multiple boyfriends and acquaintances;" (d) call witnesses to rebut the victim's testimony; and (e) request a presentence report and argue mitigating circumstances at sentencing due to his lack of criminal history; (2) his sentence is excessive; (3) "breach of plea agreement" in that his guilty plea was not knowing and intelligent; and (4) he is entitled to a full and fair evidentiary hearing.[17]

The State filed a response claiming that Henry's petition is untimely.[18]  The State further claims that Henry failed to exhaust his third and fourth claims and that they are technically procedurally barred.[19]  Alternatively, it claims that all of Henry's claims are meritless

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which was filed in this Court under the mailbox rule

---

[16]Rec. Doc. No. 1.

[17]Rec. Doc. No. 1, pp. 8-13.

[18]Rec. Doc. No. 23, pp. 4-6.

[19]*Id.*, at pp. 6-8.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

on October 21, 2020.[21]  The threshold questions on habeas review under the amended statute are

whether the petition is timely and whether the claim raised by the petitioners was adjudicated on

the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims

must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997)

(citing 28 U.S.C. § 2254(b), (c)).

The State claims that Henry's federal petition was not timely filed.  The State asserts that

Henry allowed more than one year from finality of his conviction to lapse before filing his federal

petition.  The AEDPA requires that a Section 2254 petition must ordinarily be filed within one

year of the date the conviction became final.[22]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).

---

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Henry certified that he placed his petition in the prison mailing system on October 21, 2020.  Rec. Doc. No. 1, p. 6.

[22]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The State's limitations calculation fails to acknowledge that, after the Louisiana Supreme Court found his writ application untimely, Henry moved for rehearing and provided evidence that he received late notice of the denial of his writ application by the Louisiana Fourth Circuit. After Henry filed his habeas petition, the Louisiana Supreme Court granted Henry's request for rehearing and denied his writ application. By granting his request for rehearing, the Louisiana Supreme Court implicitly found Henry's writ application timely under the circumstances. Thus, 342 days after his conviction became final, Henry filed his application for post-conviction relief and the matter remained pending in state court until the Louisiana Supreme Court granted rehearing and denied his related writ application on November 24, 2020. As Henry filed his habeas petition on October 21, 2020, it is timely. The Court therefore recommends that the State's limitations defense be rejected.

The States also argues that all of Henry's claims are unexhausted because they were not fairly presented to the Louisiana Supreme Court. The State urges that, even if Henry's "mere filing of his application for writs" exhausted certain claims, he failed to assert his third and fourth claims.[23] The State continues that, because Henry can no longer litigate those claims in state court, his claims are technically exhausted and technically procedurally barred. For the reasons explained in section IV, The record does not support the State's defense of procedural default based on alleged failure to exhaust and that defense must also be rejected.

While the State did not address procedural default as to the portion of claim one as it relates to ineffective assistance of counsel at sentencing and claim two alleging excessive sentence, the record reflects that the state courts imposed a procedural bar as to those claims. The State's

---

[23]Rec. Doc. No. 23, p. 8.

oversight of Henry's procedural default of a portion of claim one and claim two is clearly error. That error, however, is <u>not</u> an express waiver of the defense. The Fifth Circuit has held that where there is no <u>express</u> waiver, the district court may, in its discretion, raise this affirmative defense *sua sponte*. *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006) (citing *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)) (addressing procedural default). When the court exercises its discretion to do so *sua sponte*, it must assure that the petitioner has notice that the issue is being considered. *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk*, 144 F.3d at 358. Therefore, to the extent necessary, the Court hereby gives Henry express notice that the Court is considering procedural default as to claim two and a portion of claim one. *Fisher*, 169 F.3d at 301; *Magouirk*, 144 F.3d at 358. Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to her that this Court is *sua sponte* raising the issue of procedural default as to these claims and that petitioner must submit any evidence or argument concerning the default of these claims as part of any objections he may file to this report**. *Magouirk*, 144 F.3d at 348.

## IV.    <u>Exhaustion Doctrine</u>

As outlined previously, Henry asserts in his federal petition that: (1) he was denied effective assistance of counsel; (2) his sentence is excessive; (3) his plea was not knowing and voluntary; and (4) he is entitled to an evidentiary hearing. The State argues that none of the claims are exhausted because the Louisiana Supreme Court denied Henry's writ application as untimely. Alternatively, the State argues that Henry did not allow the state courts to review his third and fourth claims before seeking federal habeas relief, and the unexhausted claims are not properly before this federal habeas court.

Exhaustion of all claims through available state court review is a fundamental prerequisite to federal habeas relief under § 2254. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate or collateral review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001). "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." (emphasis added) *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" through each level of the state courts, including the highest state court, in a procedurally proper manner. *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court, and vice versa. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A prisoner does not "fairly present" a claim to the state's highest court if that court must read beyond the petition or brief, such as the lower courts' opinions or pleadings, to find a claim not otherwise specifically raised. *Id.* at 32.

In addition, "[a] federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). This requirement is not satisfied for exhaustion purposes if

the petitioner presents new legal theories or new factual claims in his federal habeas petition. *Id.* (citing *Nobles*, 127 F.3d at 420). Pursuant to these standards, Henry must have fairly presented the same claims and legal theories urged in this federal court to each of the state courts through the Louisiana Supreme Court in a procedurally proper manner.

Initially, the State claims that Henry failed to exhaust all of his claims because the Louisiana Supreme Court declined review of Henry's writ application as untimely. Claims presented in an untimely writ application have not been "fairly presented" for exhaustion purposes. *See, e.g.*, *Jackson v. Vannoy*, Civ. Action No. 17-00265, 2018 WL 1441154, at *7 (E.D. La. Feb. 27, 2018), *adopted*, 2018 WL 1409270 (E.D. La. Mar. 21, 2018), *appeal filed*, No. 19-30005 (5th Cir. Jan. 3, 2019). In this case, however, the Louisiana Supreme Court, after reviewing Henry's request for rehearing which explained the reason why he did not file his related writ application within thirty days of the Louisiana Fourth Circuit's denial of his writ application, granted rehearing. While the Louisiana Supreme Court ultimately denied the writ application, it apparently considered Henry's claims. Thus, the State's argument fails.

The State also argues that Henry's third and fourth claims are unexhausted because he failed to raise the claims at each level of the state court system and they are now in procedural default because it is too late under Louisiana law to do so. The State contends that Henry failed to raise his third and fourth claims in his application for post-conviction relief and has therefore denied the state courts one full review of these claims.[24]

---

[24]Rec. Doc. No. 23, p. 8.

Contrary to the State's suggestion, the state court record demonstrates that Henry raised his claim that his guilty plea was not knowing and voluntary, which he refers to as a "breach" of the plea agreement, at all state court levels.  In his application for post-conviction relief, Henry claimed that a "breach of the plea agreement" had occurred and explained that his plea was not intelligently and knowingly entered because he believed he would receive a sentence of ten years.[25] He also claimed that he was entitled to an evidentiary hearing.[26]  In his writ application to the Louisiana Fourth Circuit, Henry specifically asserted "Breach of Plea Bargain Agreement" and explained that his plea agreement was not knowingly and intelligently entered because he did not receive the ten-year sentence to which he agreed.[27]  He again asserted that an evidentiary hearing was necessary.[28]  Finally, in his writ application to the Louisiana Supreme Court, in his third claim, under the heading "Breach of Plea Bargain Agreement," Henry again claimed that his plea agreement was not knowingly and voluntarily made because he believed that he would receive a ten year sentence.[29]  He also claimed that an evidentiary hearing was necessary.[30]

Because Henry raised each of his claims at each level of the state courts, he has exhausted all of his claims.  Therefore, the State's exhaustion defense should be rejected.

---

[25]St. Rec. Vol. 2 of 3, Application for Post-Conviction Relief, p. 4, 6/13/17; Memorandum in Support of Petitioner's Application for Post-Conviction Relief, pp. 1-2, 5-6, 7/13/19.

[26]St. Rec. 2 of 3, Memorandum in Support of Petitioner's Application for Post-Conviction Relief, pp. 1-2, 6-7, 6/13/19.

[27]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2019-K-0667, pp. 6-8, 11-12, 8/5/19.

[28]*Id.*, at p. 12.

[29]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 19 KH 2071, pp. 7-9, 11/16/19.

[30]*Id.*, at pp. 8-9.

## V.    Procedural Default (Claim No. 2 and Part of Claim No. 1)

The record shows that the Trial Court found Henry's claims of excessive sentence and ineffective assistance of counsel with regard to sentencing were not cognizable under La. Code Crim. P. art 930.3 and *State ex rel Melinie*.[31]   The language of La. Code Crim. P. art. 930.3 enumerates grounds on which postconviction relief may be granted and does not list sentencing errors among them.   In *State ex rel. Melinie*, the Louisiana Supreme Court made clear that La. Code Crim. P. art. 930.3 "provides no basis for review of claims of excessiveness or other sentencing error post-conviction."   665 So.2d at 1172.   The Louisiana Fourth Circuit found Henry's claims of ineffective of counsel in sentencing and excessive sentence were procedurally barred under *State ex rel. Melinie*.[32]   The Louisiana Supreme Court denied Henry's related writ application without stated reasons.[33]   *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale ... then presume that the unexplained decision adopted the same reasoning.").

The Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of Henry's claims that his trial counsel rendered ineffective assistance at sentencing and that his sentence is excessive.   For a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

---

[31]St. Rec. Vol. 2 of 3, Ruling, 7/1/19.

[32]St. Rec. Vol. 2 of 3, 4th Cir. Order, 2019-K-0667, 9/17/19.  In *State ex rel. Melinie*, 665 So. 2d 1172 (La. 1996), the Louisiana Supreme Court held that, under La. Code Crim. P. art. 930.3, claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[33]*State v. Henry*, 304 So.3d 859 (La. 2020).

A.    **Independent and Adequate State Ground**

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Cone v. Bell*, 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Ramirez v. Stevens*, 641 F. App'x 312, 319 (5th Cir. 2016); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  *Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Rhoades v. Davis*, 914 F.3d 357, 372 (5th Cir. 2019) (citing *Harris v. Reed*, 489 U.S. 255, at 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).  Federal review is barred even when the state courts alternatively discuss the merits of the claim.  *Id.*; *Robinson v. Louisiana*, 606 F. App'x 199, 204 (5th Cir. 2015) (citing *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010)).

A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  *Rhoades*, 914 F.3d at 372; *Rogers v. Mississippi*, 555 F. App'x 407, 408 (5th Cir. 2014).  The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of

the claim on the merits. *See Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 316, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011); *Rogers*, 555 F. App'x at 408. A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 60-61, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009) (citation omitted). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Rogers*, 555 F. App'x at 408 (citing *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996)). The question of the adequacy of a state procedural bar is itself a federal question. *Id.* at 60, 130 S.Ct. 612 (citing *Lee*, 534 U.S. at 375, 122 S.Ct. 877).

When evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). For this reason, it is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3).

In this case, the state courts relied on La. Code Crim. P. art. 930.3 and its related ruling in *State ex rel. Melinie* to bar review of Henry's ineffective assistance of counsel in sentencing and excessive sentence claims. The federal courts have repeatedly held that La. Code Crim. P. art.

13

930.3, as interpreted by *State ex rel. Melinie*, is an independent and adequate state grounds for dismissal to bar federal habeas corpus review. *See, e.g.*, *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Table, Text in Westlaw) (recognizing Art. 930.3 and *State ex rel. Melinie* to be independent and adequate state grounds); *Reavis v. Hedgeman*, No. 15-1982, 2015 WL 7307329, at *6-7 (E.D. La. Nov. 6, 2015), *adopted*, 2015 WL 7306440 (E.D. La. Nov. 19, 2015) (article 930.3 and *State ex rel. Melinie* are "independent" and "adequate"); *Thornton v. Rogers*, No. 14-1243, 2015 WL 1012997, at *1 (E.D. La. Mar. 5, 2015) (order adopting report and recommendation) (Article 930.3, *State ex rel. Melinie*, and related cases are "independent" and "adequate"); *Williams v. Vannoy*, No. 14-1914, 2015 WL 3505116, at *6-7 (E.D. La. June 3, 2015) (same); *Williams v. Strain*, No. 13-2998, 2014 WL 5305634, at *5-6 (E.D. La. Oct. 15, 2014) (same); *Johnson v. Cain*, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (same); *Evans v. Cain*, No. 11-2584, 2012 WL 2565008, at *6-8 (E.D. La. Mar. 14, 2012), *adopted*, 2012 WL 2565001, at *1 (E.D. La. July 2, 2012) (same).

Similarly, this Court finds the bar imposed under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* both independent and adequate to bar review of the portion of Henry's first claim related to ineffective assistance of counsel in sentencing and his second claim of excessive sentence. The state court's ruling was based on Louisiana law establishing the procedural requirements for the presentation of post-conviction claims challenging his sentence. *See Fisher*, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state court's reason was independent of federal law and adequate to bar review of these claims in this federal habeas court.

Having found part of Henry's first claim and his second claim to be in procedural default, this Court will not review these defaulted claims unless he has established one of the following exceptions to the bar.

### B.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Gonzales v. Davis*, 924 F.3d 236, 241-42 (5th Cir. 2019) (citing *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546 and *Harris*, 489 U.S. at 262, 109 S.Ct. 1038).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012) ("Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule."); *Gonzales*, 924 F.3d at 242 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  *Murray*, 477 U.S. at 486.

Henry has offered no cause to excuse the procedural bar imposed by the state courts.  The record does not support a finding that any external factor prevented Henry from asserting the claims in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice." *Matchett v. Dretke*, 380 F.3d 844, 848-49 (5th Cir. 2004) (quoting *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997)).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134, n.43, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

Henry's defaulted claims are, therefore, procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996), *vacated on other grounds*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1998)[34] (finding habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief).

## C.    <u>Fundamental Miscarriage of Justice</u>

Henry may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  *Gonzales*, 924 F.3d at 241-42.  To establish a fundamental miscarriage of justice, Henry must provide this court with evidence that would support a "colorable showing of factual innocence." *Murray v. Quarterman*, 243 F. App'x 51, 55 (5th Cir. 2007).  To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Id.* (citing *Bagwell v. Dretke*, 372 F.3d 748, 756 (5th Cir. 2004)); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence requires a showing

---

[34]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte* but may do so in its discretion. *Id.*

by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 6324, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Woodfox*, 609 F.3d at 793.

Henry does not present any claim, and the record contains nothing, to suggest or establish his actual innocence on the underlying crimes to compel this court to consider his defaulted claims, none of which address guilt or innocence.  In other words, Henry fails to present any evidence or argument of actual innocence to excuse the procedural default of these claims.  He, therefore, has failed to overcome the procedural bar to his claims, and his claim of excessive sentence (claim two), and the portion of his ineffective assistance of counsel claim (claim one) as it relates to sentencing should be dismissed with prejudice.

**VI.**    **Standards of a Merits Review of the Remaining Claims**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies

the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S.415, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VII.    Ineffective Assistance of Counsel (Claim One)

Henry claims that he was denied effective assistance of counsel before his June 5, 2018 sentencing.  He claims that his counsel told him that he would receive a ten-year sentence if he pled guilty.  He also claims that his counsel failed to seek DNA testing of the alleged victim or gather any expert medical testimony, failed to file a motion to suppress his statement, failed to hire an investigator to explore the victim's sexual history, and to call witnesses to rebut the victim's

testimony.  Henry asserted these claims on state post-conviction review, which ultimately was denied by the Louisiana Supreme Court without reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), is the appropriate standard for judging the performance of counsel when a defendant enters a plea of guilty.  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985).  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (1995).

Applying *Strickland* under *Hill* in the context of a plea, the deficiency prong is satisfied by a showing that " 'counsel's representation fell below an objective standard of reasonableness.' " *Hill*, 474 U.S. at 57, 106 S.Ct. 366 (quoting *Strickland*, 466 U.S. at 687-88, 104 S.Ct. 2052).  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' "  *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838,

122 L.Ed.2d 180 (1993) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104, 131 S.Ct. 770 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight."  *Bell*, 535 U.S. at 702, 122 S.Ct. 1843 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Bell*, 535 U.S. at 695 (quoting *Strickland*, 466 U.S. at 694); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).  In the context of a guilty plea, "[i]n order to satisfy ... [*Strickland's*] 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59, 106 S.Ct. 366.  Furthermore, "[t]he petitioner must 'affirmatively prove,' [and] not just allege, prejudice."  *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence

under 'prevailing professional norms,' not whether it deviated from best practices or most common

custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court

went on to recognize the high level of deference owed to a state court's findings under *Strickland*

in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and
> when the two apply in tandem, review is doubly so. The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial. Federal habeas
> courts must guard against the danger of equating unreasonableness under *Strickland*
> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is
> not whether counsel's actions were reasonable. The question is whether there is
> any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."

*Cullen*, 563 U.S. at 190, 131 S.Ct. 1388 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112, 129

S.Ct. 1411, 173 L.Ed.2d 251 (2009)). The federal courts must take a "highly deferential" look at

counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)."

*Id.* (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, and quoting *Knowles*, 556 U.S. at 121 n.2,

129 S.Ct. 1411).

Henry claims his counsel failed to properly investigate the case before advising him to

enter his guilty pleas. He claims that his counsel failed to request the victim's medical records and

that counsel should have requested DNA testing of the victim. He further claims that his counsel

failed to hire an investigator to investigate the sexual history of the victim.

When a petitioner alleges a failure of his counsel to investigate, he "must allege with

specificity what the investigation would have revealed and how it would have altered the outcome

of the trial.' " *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other

words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

As an initial matter, Henry has failed to establish that counsel's investigation without an investigator was actually inadequate in any respect.  In fact, he presented no evidence whatsoever as to what investigative steps counsel actually took or failed to take.  Without such evidence, he cannot show that counsel performed deficiently. *Netter v. Cain*, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), *adopted*, 2016 WL 7116070 (E.D. La. Dec. 7, 2016). Further, even if petitioner had made that showing, he would then have to prove that prejudice in fact resulted from the failure to hire an investigator.  Henry has not shown that any beneficial information would have been revealed by further investigation; rather, his assertions are entirely speculative, and such bare speculation is not sufficient to meet his burden of proof. *See Thomas v. Cain*, Civ. Action No. 09-445, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

While Henry claims his counsel failed to gather the victim's medical records, the record reflects that the defense was in fact provided with medical records of the victim in discovery.[35]  As for the failure to request "DNA testing" on the victim, according to the victim's statement to police, the last incident of sexual assault occurred two weeks prior to her report.[36]  As a result, Henry has not shown that any beneficial information would have been revealed from such testing.  Rather, his assertions regarding both the medical records and the DNA testing are entirely speculative.  Henry, therefore, fails to meet his burden of proof.  *See Thomas*, Civ. No. 09-4425, 2009 WL 4799203, at *9.

Henry further faults his counsel for failing to investigate the victim's sexual history.  Henry, however, does not offer any evidence to support his claim that the child victim had "sexual activities" with boyfriends or acquaintances.  Further, any evidence of the victim's sexual history would not have been admissible under the circumstances of the case, and defense counsel would have had no legal basis to present evidence of the victim's prior sexual conduct with other persons.  *See* La. Code Evid. Art. 412 (prohibiting evidence regarding the past sexual behavior of the victim in sexual assault cases, except (1) when there is an issue of whether the accused was the source of semen or injury, "provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense," and (2) when the past sexual behavior is with the accused and there is an issue of whether the victim consented to the charged sexually assaultive behavior.).  Thus, Henry cannot establish that counsel was deficient nor that counsel's failure to investigate the victim's sexual history, prejudiced him.

---

[35]St. Rec. Vol. 2 of 3, State's Inventory of Discovery Tendered to Defendant Tyrone Henry (S-1), 12/2/16.

[36]St. Rec. Vol. 2 of 3, Affidavit for Arrest Warrant, 9/15/16.

Henry also claims that his counsel should have called witnesses to rebut the victim's claims. Initially, "[c]ounsel cannot be presumed to have failed to present a defense or call witnesses when there was no opportunity to do so before the plea was entered." *Temple v. Vannoy*, Civ. Action No. 18-1536, 2018 WL 8899671, at *6 (E.D. La. Sept. 7, 2018), *adopted*, 2019 WL 3430489 (E.D. La. Jul. 30, 2019). In this case, Henry pled guilty before the scheduled trial. Thus, there was no opportunity for his counsel to call witnesses.

Further, to prevail on a claim of ineffective assistance of counsel in failing to call witnesses, the petitioner must identify the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. *Day*, 566 F.3d at 538 (citing *Bray*, 265 F. App'x at 298)). The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.' " *Hooks v. Thaler*, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting *Woodfox*, 609 F.3d at 808).

The only two proposed witnesses Henry identifies are his mother, Geneva Henry, and the victim. Henry fails to explain the substance of the expected testimony of either witness. Further, he provides no evidence, such as affidavits from any of the proposed witnesses, demonstrating that they were available and would testified in a manner beneficial to the defense. Therefore, Henry failed to meet his burden of proof with respect to this claim. *See, e.g.*, *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July

7, 2011); *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director*, TDCJ-CID, No. 06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Henry next claims his counsel was ineffective in failing to move to suppress his statement to police. According to the arrest warrant, Henry admitted that he engaged in sexual intercourse with the victim, which started in February 2016 when the victim was 12 years, but denied raping her.[37] Henry, however, claims that he was recovering from renal surgery and under the influence of prescription drugs when he was interrogated by police. He claims that he was not informed of his rights and that the officers used trickery, deception and improper interrogation tactics during the interview.

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Henry has not made that showing.

---

[37] St. Rec. Vol. 2 of 3, Affidavit for Arrest Warrant, 9/15/16.

Further, even assuming that counsel had filed a motion to suppress and Henry's statement to police were suppressed, the suppression of the statement would not have been a basis to dismiss the charges. The State could have proceeded against Henry with other evidence including the victim's statement to police and the related records from the Audrey Hepburn Care Center.[38] Henry still would have faced a mandatory life sentence. He fails to offer any argument as to why he would have altered his decision to plead guilty and proceeded to trial had his statement to police been suppressed.

Finally, Henry claims that his counsel advised him that he would receive a ten-year sentence. He suggests that this alleged assurance by counsel tainted the intelligence of his guilty plea. He has failed to provide his entitlement to relief.

The record reflects that Henry accepted a plea agreement to the amended bill of information. As recognized by the State, there is no factual support for Henry's claim that defense counsel promised him a ten-year sentence. Rather, the written plea agreement completely belies Henry's claim that his counsel assured him that he would receive a ten-year sentence. The plea agreement, which was prepared by defense counsel, provides:

My name is TYRONE HENRY. I was born on the 27TH day of FEBRUARY, 1979, in NEW ORLEANS, LOUISIANA. I have received an associates degree. I am a citizen of the United States of America.

Although I have previously entered a plea of Not Guilty to the charge(s) in this case, and I understand that I have right to persist in my plea of Not Guilty, I desire instead to pled Guilty because I am guilty of the following offense[s]:

Attempted Second Degree Rape on September 01, 2016, a violation of La. R.S. 14:(27)42.1. The sentencing range is imprisonment at hard labor for 10-20 years. At least 2 years without benefit of parole, probation, or parole.

---

[38]St. Rec. Vol. 2 of 3,  State's Inventory of Discovery Tendered to Defendant Tyrone Henry (S-1), 12/2/6.

Second Degree Rape on February 1, 2016, a violation of La. R.S. 14:42.1. The sentencing range is imprisonment at hard labor for 5-40 years.  At least 2 years without benefit of parole, probation, or suspension of sentence.

Second Degree Rape on June 06, 2016, a violation of La. R.S. 14:42.1.  The sentencing range is imprisonment at hard labor for 5-40 years.  At least 2 years without benefit of parole, probation, or suspension of sentence.

By changing my plea from "Not Guilty" to "Guilty," I am not simply confessing to these crimes; I am supplying the conviction.  After conferring with my attorney, I am knowingly, willingly, intelligently and voluntarily waiving or giving up rights which I have under the Constitutions of the United States of American and of the State of Louisiana.

I understand that among these rights I am waiving or giving up is the right against self-incrimination, or stated another way, the right to remain silent.  Also, I am giving up the right to a trial by JURY.  I am also giving up the right to confront and cross-examine my accusers at a trial as well as to compel the attendance of witnesses who may be helpful to my defense at a trial.

Because I am giving up my right to a trial, I am giving up my right to the assistance of counsel at trial, including counsel appointed for me if I could not hire my own counsel.  And, because there will be no trial, I am also giving up my right to appeal to a higher court any guilty verdict that might have been returned against me.  I understand that I cannot appeal my guilty plea unless I have entered my plea under *State v. Crosby* and I may appeal my sentence unless I have agreed to it.  I have not been illegally or unlawfully forced, threatened, or intimidated into pleading guilty. I have received a promise of leniency to amend the charges.

My sentence in this case will be as follows:

The sentence for La. R.S. 14:(27)42.1 is 20 years in the custody of the DOC.

The sentence for each count of La. R.S. 14:42.1 is 40 years in the custody of the DOC.

These sentences along with any and all sentences will run concurrent.

But I acknowledge that the judge has NOT agreed to any sentence and is not bound by these promises of leniency.  If the judge does not sentence me as agree with the district attorney, however, I may withdraw from this guilty plea.

I am satisfied with the representation given me by my attorney(s): JOSEPH A. ROME.  I feel that my attorney(s) communicated with me sufficiently to understand the facts of my case and that they have conducted a suitable investigation of the facts and law during the course of his representation of me.

There is nothing that I asked my attorney(s) to check-out that to my knowledge was left undone. All my questions about my guilty plea and its consequences have been answered by my attorney(s) to my satisfaction.

My guilty plea once it is accepted by the judge will constitute a conviction. Even though I cannot appeal this conviction, I understand that I still may be able to challenge the conviction in later proceedings known as post-conviction proceedings if I am imprisoned as a result of this conviction. But such proceedings have definite deadlines or limits on the time by which they must be commenced in federal and state courts. And I assure the judge, the district attorney, and my attorney(s) that upon my incarceration for this conviction I will make diligent inquiry as to any grounds to challenge this conviction.[39]

The written guilty plea, both initialed and signed by Henry, and also signed by his counsel, and the prosecutor, very clearly specified that Henry would receive a sentence of forty years for each count of second degree rape, and a sentence of twenty years for attempted second degree rape, all sentences to run concurrently.[40] Henry, by initialing and signing the plea agreement, admitted that he was entering the guilty plea because he in fact committed the crimes.[41] Henry agreed that he was satisfied with counsel's representation and handling of his case.[42] He maintained his desire to plead guilty even when informed he had the right to proceed to trial.[43]

Given the serious charges against Henry, the guilty plea provided him with a clear benefit. Henry agreed to plead guilty and receive concurrent sentences of forty years for second degree rape and twenty years attempted second degree rape, rather than proceed to a jury trial where he could face a mandatory life sentence. By accepting that beneficial plea agreement and pleading

---

[39] St. Rec. Vol. 2 of 3, Waiver of Constitutional Rights, Plea of Guilty, 5/31/18.

[40] *Id.*

[41] *Id.*

[42] St. Rec. Vol. 2 of 3, Waiver of Constitutional Rights, Plea of Guilty, 5/31/18.

[43] St. Rec. Vol. 1 of 3, Guilty Plea Minutes, 5/31/18.

guilty, Henry guaranteed himself a significantly lower sentence. Henry greatly benefited from the pleas and was not prejudiced by any advice by counsel to enter the plea. He has not shown that counsel's advice under the circumstances of his case was unreasonable. *See Day*, 566 F.3d at 536 (quoting *Strickland*, 466 U.S. at 693).

Not only has Henry failed to establish that his counsel's performance was objectively unreasonable, Henry has failed to show with any reasonable probability that, but for defense counsel's alleged deficiencies, he would not have pleaded guilty and would have insisted on going to trial. Significantly, Henry does not even allege that, but for counsel's alleged deficiencies errors, he likely would not have entered the guilty plea and would have proceeded to trial on the original charges which carried a mandatory life sentence. Without a showing that there is a substantial probability that he would not have entered a guilty plea, and would have insisted on proceeding to trial if his attorney had not committed the alleged errors, this Court cannot find that he was prejudiced by his counsel's performance under the standards set forth in *Hill* and *Strickland*.

For the foregoing reasons, Henry has failed to establish that counsel's performance was deficient or prejudicial under the *Strickland* test. He is not entitled to federal habeas corpus relief on these claims.

## VIII.  **Guilty Plea (Claim No. 3)**

In his third claim, Henry asserts that his guilty plea was not knowing and intelligent, and that there was a breach of the plea agreement. Henry claims that he was told that, if he pled guilty, he would receive a ten-year sentence and each sentence would run concurrent. The State claims that Henry's plea was knowing and voluntary.

Henry raised this claim in his application for post-conviction relief.  The Louisiana Fourth Circuit found Henry's "breach of plea bargain claim, the substance of which is a challenge to his guilty plea, is cognizable in post-conviction proceedings.  Nevertheless, Henry has not made a threshold showing that he is entitled to post-conviction relief as to those allegations."[44]  This was the last reasoned state court opinion on the issue.  *See Wilson*, 138 S. Ct. at 1192.

The validity of a guilty plea is a question of law, although historical facts are entitled to a presumption of correctness.  *See Parke v. Raley*, 506 U.S. 20, 35, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (citing *Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1988).  The Court must therefore determine if denial of relief was contrary to, or an unreasonable application of, federal law.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently."  *Montoya*, 226 F.3d at 404 (citing *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)). "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead ... without being coerced to do so, the ... plea ... will be upheld on federal review."  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).  A plea therefore "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' "  *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct.

---

[44]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2019-K-0667, 9/17/19

1463, 25 L.Ed.2d 747 (1970)).  Thus, a petitioner generally may not "collaterally attack a voluntary and intelligent" plea.  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.' "  *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749, 90 S.Ct. 1463).  Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation.  *See Amaya*, 111 F.3d at 389.  "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead ... without being coerced to do so, the ... plea ... will be upheld on federal review."  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

A plea qualifies as intelligently given when the criminal defendant enters it after receiving " 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' "  *Bousley*, 523 U.S. at 618, 118 S.Ct. 1604 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 85 L.Ed. 859 (1941)).  "To be knowing and intelligent, the defendant must have 'a full understanding of what the plea connotes and of its consequences.'"  *Hernandez*, 234 F.3d at 255 (quoting *Boykin*, 395 U.S. at 244, 89 S.Ct. 1709).  "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged."  *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990); *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996).  A defendant who is aware of the maximum term of imprisonment he faces is aware of the consequences of his plea, thus rendering it valid for constitutional purposes.  *Hobbs v. Blackburn*, 752 F.2d 1079, 1082 (5th Cir.), *cert. denied*, 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985); *Hernandez*, 234 F.3d at 256-57 (with

respect to sentencing issues, a matter is a direct consequence of the plea only if it is related to either the length or nature of the sentence).

Louisiana law follows the same directives in its requirements under the provisions of La. Code Crim. P. art. 556.1 regarding guilty pleas to a felony.[45]  Thus, Henry's guilty pleas are constitutionally valid if he understood the nature of the charges against him and the constitutional protections being waived and was aware of his sentence exposure.  *See James*, 56 F.3d at 666 (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)).

The record in this case reflects that Henry was informed of his rights in writing and signed a written waiver of those rights.[46]  In his written plea, he agreed that he had was not forced, threatened, or coerced to enter the guilty plea.[47]  At the guilty plea hearing, Henry acknowledged that he understood the rights he was waiving, including the privilege against self-incrimination,

---

[45]For example, La. Code Crim. P. art. 556.1(A) provides in relevant part as follows:

> A. In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
>
> (1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
>
> (2) If the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if financially unable to employ counsel, one will be appointed to represent him.
>
> (3) That he has the right to plead not guilty or to persist in that plea if it has already been made, and that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.
>
> (4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

[46]St. Rec. Vol. 2 of 3, Waiver of Constitutional Rights, Plea of Guilty, 5/31/18.

[47]*Id.*

the right to trial by jury and the right to confront his accusers in court.[48] *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  He was advised of the nature of the charges to which he was pleading guilty and he admitted to each of those charges as set forth by the Trial Court.[49]

Further, in the Henry's "Waiver of Constitutional Rights Plea of Guilty" form signed by him, his counsel, the prosecutor, and the Trial Court, Henry acknowledged that he was "satisfied with the representation given [him] by [his] attorney(s): JOSEPH A. ROME."  The written plea agreement specifically set forth the sentences Henry would receive in exchange for his plea.  His unsupported allegation that his counsel told him he would receive a sentence of ten years where defense counsel prepared the plea agreement providing for a total sentence of forty years do not provide compelling evidence as to why the statements in the written plea agreement and the confirmations Henry made during the plea colloquy should not be accorded weight and accepted as true.

Contrary to Henry's arguments, the record is eminently clear that the constitutional requirements for a knowing and voluntary plea were fully met.  Henry knew he was pleading guilty to the lesser offenses of second degree rape and attempted second degree rape after originally being charged with first degree rape and attempted first degree rape and that he would receive a lighter sentence as part of the plea agreement.  He acknowledged before the Trial Court and on the form that he understood the nature of the amended charges, the consequences of his plea, and the free waiver of his constitutional rights.  It also is quite compelling that Henry greatly benefitted from his negotiated agreement to enter the plea of guilty to the lesser offense of second degree rape for

---

[48]St. Rec. Vol. 2 of 3, Guilty Plea Minutes, 5/31/18.

[49]*Id.*

which he would receive only a forty-year sentence when he faced life imprisonment if found guilty of first degree rape.

The record plainly demonstrates that Henry's plea was voluntary and that he has presented no evidence to the contrary. The record demonstrates that Henry was aware of the charges against him, the constitutional rights he was waiving, and the consequences of his plea. He has not established that his plea was involuntarily or unknowingly made. Henry is not entitled to federal habeas relief as to this claim.

To the extent that Henry claims a "breach of the plea agreement" rendered his guilty plea unknowing and unintelligent, that claim is not supported by law. The Supreme Court has made clear that the breach of a plea agreement does not invalidate the guilty plea or render it unknowing or involuntary.

> In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary. It is precisely because the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain.

*Puckett v. United States*, 556 U.S. 129, 137-38 (2009). Instead, if a breach is established, the result is for the reviewing court to determine an appropriate remedy for the wronged party, which depending on the circumstances could be enforcement of the promise or if necessary, rescission of the agreement. *See id.* at 137 ("The party injured by the breach will generally be entitled to some remedy ... which may include rescission of the agreement ... [or] specific performance of the contract.").

The question of whether a breach has occurred is gauged by " 'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.' " *United States v. Lewis*, 476 F.3d 369, 387-88 (5th Cir. 2007) (quoting *United States v. Valencia*, 985 F.2d

758, 761 (5th Cir. 1993)).   The movant bears the burden of demonstrating the breach of the agreement by a preponderance of the evidence.  *Id.*, at 387.  A habeas petitioner who claims a breach of a plea bargain must prove (1) exactly what the terms of the alleged promises were, (2) exactly when, where, and by whom such a promise was made, and (3) the precise identity of any eyewitnesses to the promise.  *Bonvillian v. Blackburn*, 780 F.2d 1248, 1250-51 (5th Cir. 1986).

In the instant case, Henry relies on the following exchange between the prosecutor and the Trial Court, which occurred at sentencing, in an attempt to establish that a breach of his plea agreement occurred:

> MR. TRUMMEL:  Your Honor, Tiffany Edwards is the guardian of the victim who was 12 and 13 at the time of the incident.  I spoke to her personally twice last week.  She said she wanted to come make a victim impact statement.  She is not here today.  My victim/witness counselor has attempted to call her a couple of times today.  It has gone straight to voicemail.
>
> I did tell her that the State was offering him 40 years.  She expressed to me that she wanted to give him 10 years.  So she is aware of the situation.  And I would ask that you move forward with sentencing.
>
> THE COURT:  Had you at all communicated to her that I had communicated both to you and to Mr. Rome that even if the District Attorney was agreeable to a ten-year sentence, I was not agreeable to that?
>
> MR. TRUMMEL:  I did not, sir.[50]

There is, however, nothing in the record to support Henry's claim that the prosecution agreed to a sentence of imprisonment of ten years.  Rather, it is very clear from the foregoing exchange, which occurred in Henry's presence and to which he did not object, that the plea offer by the prosecution was for a sentence of forty years.  It is also clear that, while the victim's mother apparently suggested sentence of ten years, the Trial Court was not agreeable to a ten-year sentence

---

[50] St Rec. Vol. 2 of 3, Sentencing Transcript, pp. 2-3, 6/5/18.

and would not have accepted such a plea.  Again, the written plea agreement prepared by his counsel, executed by Henry, and approved by the prosecutor provided for a total sentence of forty years.[51]

For these reasons, Henry's claim that the State breached his plea agreement is unfounded and legally meritless.  He is not entitled to federal habeas corpus relief.

## IX.    Denial of Evidentiary Hearing (Claim No. 4)

Henry asserts that he was entitled to an evidentiary hearing to further develop the factual support for this claims.

To the extent he suggests that the state courts should have provided him with an evidentiary hearing, the claim would not entitle him to federal habeas corpus review or relief.  The law is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001).  An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue to be addressed in federal habeas cases.  *Id.*, at 320; *Drevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 402-403, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (no constitutional mandate that states provide post-conviction review) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)).

Henry's request for a federal evidentiary hearing in this Court must be denied.  As discussed by the Supreme Court in *Cullen v. Pinholster*, 563 U.S. 170, 185-86, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2).  The statute restricts evidentiary hearings

---

[51]St. Rec. Vol. 2 of 3, Waiver of Constitutional Rights, Plea of Guilty, 5/31/18.

to those instances where the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. The *Cullen* Court recognized that where these requirements are not met, evidence presented for the first time may not be considered on federal habeas review to address the merits of the claims under § 2254(d)(1).  *Id.*

This Court, therefore, is limited to review of the evidence and record that was before the state courts which reviewed the merits of the type of claims at issue.  *Cullen*, 563 U.S. at 185, 131 S.Ct. 1388; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, 520 F. App'x 276, 281-83 (5th Cir. 2013).  In this case, Henry has not based his claims on a new, retroactive rule of law under the provisions of § 2254(e)(2).  He has made no showing of entitlement to relief from his conviction by clear and convincing evidence undermining his guilt.  For the reasons discussed below, he has failed to establish his entitlement to federal habeas relief.  Therefore, there is no basis for this Court to grant an evidentiary hearing.

## X.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Tyrone Henry's for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[52]

New Orleans, Louisiana, this 25th   day of February, 2022.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[52]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.